# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs November 10, 2011

## VIVIAN YVONNE ARMSTRONG v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-D-2763     J. Randall Wyatt, Jr., Judge**

**No. M2011-00664-CCA-R3-PC - Filed July 18, 2012**

Petitioner, Vivian Armstrong, appeals the dismissal of her petition for post-conviction relief in which she alleged that her guilty plea was unknowingly and involuntarily entered due to the ineffective assistance of trial counsel. More specifically she contends that (1) trial counsel "scared" her into pleading guilty; (2) counsel failed to adequately meet with her and was unprepared to go to trial; and (3) counsel used the "safety valve" as an incentive to induce her into pleading guilty. After a thorough review of the record, we conclude that Petitioner has failed to show that her trial counsel rendered ineffective assistance of counsel, and we accordingly affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Vivian Yvonne Armstrong.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; Kathy Morante, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

## I. Background

A Davidson County Grand Jury returned an indictment against Petitioner and Co-Defendant, Ronkeivius Charles Williamson, charging them with first degree murder. Petitioner subsequently entered a plea of guilty to facilitation of first degree murder with an agreed sentence of twenty-five years at 45% release eligibility to be served in the Department

of Correction. Petitioner filed a timely petition for post-conviction relief that was denied by the trial court.

## II. Post-Conviction Hearing

Concerning her contact with trial counsel, Petitioner said, "He came out to the jail to see me like maybe once or twice or maybe three times, but other than that I didn't see him a lot until the last week [before] my trial." She thought that the case had been set for trial "about a month or so" before she entered her plea.

Petitioner testified that she did not understand when trial counsel "was explaining stuff" to her and "when he came to [her] telling [her] to sign [her] papers about the time [she] took." She claimed that trial counsel kept talking about a "safety valve" which she did not understand. She later found out that a "safety valve" involves early release. Petitioner testified that trial counsel scared her into pleading guilty because he told her that she was facing a life sentence "so [she] took what [she] felt like he wanted [her] to take," which was twenty-five years at 45%. She understood that she had a right to go to trial regardless of what trial counsel told her.

Petitioner testified that trial counsel hired an investigator for her case, but she never received any notes from the investigator. She said that trial counsel told her what the investigator said. Petitioner testified that she wrote trial counsel one letter early on in the case, and trial counsel responded to the letter. She did not feel that trial counsel was prepared for trial because he gave up on her in the end, and he "wasn't really trying to be there for [her]." Petitioner testified that she told trial counsel to talk to several potential witnesses that included Shakosha Armstrong and Kia Armstrong, her two daughters, and Raymond Johnson, Shauntel Huggins, Labarius Huggins, and Fred Oglesby. She said that she furnished trial counsel with phone numbers and addresses for all of the witnesses. She also gave the information directly to the investigator. Petitioner testified that she understood everything that the trial court told her during the guilty plea submission hearing, including that she was voluntarily entering the plea. However, she felt that she had no other choice than to plead guilty.

On cross-examination, Petitioner testified that trial counsel never talked to any of her witnesses. She agreed that the murder in her case grew out of a fight between Kia Armstrong's friend and some other individuals. Petitioner disagreed with the State's version of the facts that were submitted at the guilty plea submission hearing which included a statement that she handed a loaded gun to a fourteen-year-old and said "go at 'em," and as a result, an innocent victim was murdered. She claimed that although the State's version of the facts was incorrect, she did not say anything at the hearing.

Trial counsel testified that at the time of Petitioner's plea agreement, approximately ninety-percent of his practice was criminal law, and he had handled several murder cases. He thought that Petitioner's case was set for trial twice. Trial counsel did not recall the exact number of meetings with Petitioner, but he was "quite certain that it [was] much more than three." He obtained funds for a private investigator who also met with Petitioner a number of times. Trial counsel testified that he also spoke with Petitioner's children who came to court several times. He admitted that the investigator had problems "pinning them down to, to meet with them." Trial counsel testified that he and the investigator spoke with Petitioner's witnesses "as well as talking to all of the State witnesses that [they] could as well." Trial counsel further testified:

> There was even an alternative theory of a person who may have handed the gun to the co-defendant who then did do the shooting and we tried to follow-up on that as best as we could. There was a [sic] allegedly a phone call between [Petitioner] in jail to this person wherein the person allegedly admitted to doing that and we did speak with all of the jail personnel, however, by that point the recordings of the conversations which occur when one is in jail, they record all conversations, they no longer have those recordings. They only keep them a limited amount of time, so we weren't able to follow-up on that but we did investigate and interview everyone we could.

Trial counsel testified that he was prepared for trial, and he spoke with Petitioner about testifying and "trying to get her ready for that." He noted that Petitioner denied handing the gun to the co-defendant, which was contradicted by the State's witnesses. Trial counsel said:

> We were going to impeach their credibility because as you mentioned with her there was an argument between her family and this other family and the other family was the ones that were saying she is the one that had the gun, so that was basically going to be our defense was we are going to attack their credibility and they had a reason to fabricate the story and possibly her testifying as well.

Trial counsel testified that the case was settled within a week of the trial date. He said that he had spoken with Petitioner about the plea and the possibilities, and he was able to allow her to speak with family about the plea before it was entered. He explained the amount of time that she faced if found guilty of first degree murder versus the State's offer. Trial counsel testified:

-3-

And I think the worse thing that we had going against us is the fact that she was the adult there and the child was the one that did the shooting. He was 14 at the time. I believe at the time of the trial he was maybe 17, but I was concerned that a jury would look disfavorably if they believed the State's witnesses that she is the adult and that she is providing the weapon and I, you know, I explained all of that to her and what her options were.

Trial counsel did not recall if he recommended that Petitioner accept the State's offer, but he knew that if the jury believed the State's witnesses at trial, facilitation of first degree murder was the best that they could have hoped for. He said, "We ended up getting facilitation in a plea at slighter higher percentages as in the way of [sic] plea bargain as opposed to the 100 percent sentence that she was facing." Trial counsel testified that Petitioner never gave the impression that she did not understand her options or that she was unwilling to take the plea.

On cross-examination, trial counsel testified that Petitioner gave the names of potential witnesses to him and the private investigator. He said that he and the investigator met with Petitioner together, and the investigator met with Petitioner a number of times to review the case. Trial counsel testified that the investigator generated reports of witnesses that he interviewed and shared them with Petitioner.

## III. Standard of Review

In a claim for post-conviction relief, the petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103. Petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); *Grindstaff v. State,* 297 S.W.3d 208, 216 (Tenn. 2009). The post-conviction court's factual findings "are conclusive on appeal unless the evidence preponderates against those findings." *Jaco v. State,* 120 S.W.3d 828, 830 (Tenn. 2003). Upon review, this court will not reweigh or reevaluate the evidence below, and all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial court, not this court. *Momon v. State,* 18 S.W.3d 152, 156 (Tenn. 1999).

On appeal, the post-conviction court's findings of fact are entitled to substantial deference and are given the weight of a jury verdict. They are conclusive unless the evidence preponderates against them. *See Henley v. State,* 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State,* 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). A post-conviction court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Fields v. State,* 40 S.W.3d 450, 457 (Tenn. 2001). Our supreme court has "determined that

the issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact, ... thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *State v. Burns,* 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief based on the alleged ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient, and (b) that the deficient performance was prejudicial. *See Powers v. State,* 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result would have been different. *See Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State,* 960 S.W.2d 572, 580 (Tenn. 1997).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State,* 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State,* 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *See Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (citing *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, Petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *See Baxter,* 523 S.W.2d at 936. Under *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Petitioner must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59; *see also Walton v. State,* 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

First, Petitioner argues that trial counsel "scared" her into pleading guilty. In her brief, Petitioner does not allege how trial counsel scared her into pleading guilty or give any other argument regarding this issue. At the post-conviction hearing, Petitioner testified that trial counsel scared her into pleading guilty by advising her that she faced a life sentence if her case went to trial. This was not inaccurate advice since Petitioner was charged with first degree murder. Moreover, Petitioner has not shown that she was in any way prejudiced by trial counsel's advice. Petitioner admitted that she knew of her right to go to trial and that she pled guilty because she wanted to avoid a life sentence. Trial counsel testified that he had spoken with Petitioner about the plea and the possibilities, and he was able to allow her to speak with her family about the plea before it was entered. Petitioner has failed to carry her burden of proof on this allegation by clear and convincing evidence, and she is not entitled to relief.

Next, Petitioner contends that trial counsel was ineffective for failing to adequately meet with her and that he was unprepared for trial. She argues that the record does not show that trial counsel met with her more than three or four times the week before her trial. In the order denying Petitioner's post-conviction petition, the post-conviction court essentially accredited trial counsel's testimony that trial counsel met with Petitioner several times in jail and that the private investigator also met with Petitioner. The court also noted that trial counsel responded to a letter that Petitioner wrote to him.

Petitioner also asserts that trial counsel was unprepared because he failed to interview potential witnesses in her case. Again, the post-conviction court accredited trial counsel's testimony that he spoke with all of the State's witnesses and all of the witnesses provided by Petitioner. Trial counsel hired a private investigator who also interviewed witnesses, and he generated reports on the interviews that were shared with Petitioner. Trial counsel testified that he was prepared for trial, and he spoke with Petitioner about testifying and "trying to get her ready for that." He also testified that Petitioner's defense was to attack the credibility of the State's witnesses and show that they had reason to fabricate the story that Petitioner handed the gun to the co-defendant who shot the victim. Petitioner again has failed to carry her burden of proof on this contention by clear and convincing evidence, and she is not entitled to relief.

Finally, Petitioner argues that trial counsel used the "safety valve" to induce her into pleading guilty. Again, Petitioner does not allege how trial counsel used this to induce her to plead guilty or give any other argument regarding this issue. At the post-conviction hearing Petitioner claimed that trial counsel talked about a "safety valve" which she did not

understand. She later found out that a "safety valve" involved early release. Petitioner did not present any other proof on this issue, and she had not demonstrated what trial counsel told her concerning this issue or that his advice was erroneous. Also, Petitioner has failed to demonstrate that she was in any way prejudiced by trial counsel's advice. As previously noted, Petitioner testified that she pled guilty in order to avoid a potential life sentence for first degree murder.

Concerning Petitioner's guilty plea, the trial court held:

After considering the testimony, as well as the transcript of the plea proceedings, the Court does not find any merit to the Petitioner's contention that the guilty plea was not entered into voluntarily and intelligently. The Court finds that the Petitioner was represented by an experienced, competent attorney who adequately explained the criminal proceedings that the Petitioner was facing and the possible alternatives. The Court finds a lack of any evidence indicating coercion, threats, or any other sign that the Petitioner's will was overborne by an outside influence. The Court finds [trial counsel] was fully prepared to go to trial in the event that the Petitioner decided against accepting the State's plea offer. The Court finds that the Petitioner was fully apprised of the charges against her and the possible penalty of life imprisonment if the jury found her guilty of the indicted offense, but she voluntarily decided to accept the State's offer to plead guilty to Facilitation of First Degree murder and receive twenty-five years imprisonment instead. The Court is therefore of the opinion that the Petitioner's plea of guilty was entered into knowingly, voluntarily, and intelligently.

The record in this case does not preponderate against the trial court's findings.

We conclude that Petitioner has failed to show by clear and convincing evidence that her guilty plea was involuntarily or unknowingly entered, that she received ineffective assistance of counsel or that she was prejudiced by any alleged ineffective assistance of counsel. Petitioner is not entitled to relief in this appeal.

**CONCLUSION**

After a thorough review, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE